UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR A. SANTIAGO, | No. 2:13-cv-2174-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications, in part, for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the Commissioner's motion is granted and plaintiff's motion is denied.

I.   BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI on May 28, 2010, alleging that he had been disabled since December 5, 2009. Administrative Record ("AR") 111-120. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 54-59, 62-68. On April 26, 2012, a hearing was held before administrative law judge ("ALJ") Trevor Skarda.

1

*Id.* at 25-46. Plaintiff was represented by counsel at the hearings, at which he and a vocational expert ("VE") testified. *Id.*

On June 5, 2012, the ALJ issued a decision finding that plaintiff was not disabled prior to January 22, 2012, but that he became disabled on that date under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 12-20. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. Since the alleged onset date of disability, December 5, 2009, the claimant had had [sic] the following severe impairments: Bronchial asthma, obstructive sleep apnea, right leg lymphedema, and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. Since the alleged onset date of disability, December 5, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that prior to January 22, 2012, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can stand or walk 2 hours during an 8-hour workday and lift or carry 20 pounds occasionally and 10 pounds frequently. He can occasionally climb ramps or stairs, kneel, and crawl, frequently balance, stoop, or crouch, and never climb ladders, ropes, or scaffolds. The claimant should avoid moderate exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilated areas, and all exposure to dangerous operational control of moving machinery and unprotected heights.

   * * *

6. After careful consideration of the entire record, the undersigned finds that beginning on January 22, 2012, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can stand or walk 2 hours during an 8-hour workday and lift or carry 20 pounds occasionally and 10 pounds frequently. He can occasionally climb ramps or stairs, kneel, and crawl, frequently balance, stoop, or crouch, and never climb ladders, ropes, or scaffolds. The claimant should avoid moderate exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilated areas, and all exposure to dangerous operational control of moving machinery and unprotected heights. He must elevate one leg, more than 20% of the workday, at or above chest level. The claimant would miss work more than one time per month on an ongoing basis and requires two additional breaks 15 minutes or greater each day. He is unable to sustain work activity on a regular basis for 8 hours a day 40 hours a week

   * * *

7. Since December 5, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

   * * *

8. Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to January 22, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on January 22, 2012, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to January 22, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

* * *

12. Beginning on January 22, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

* * *

13. The claimant was not disabled prior to January 22, 2012, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 14-20.

Plaintiff's request for Appeals Council review was denied on August 21, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

4

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff challenges the ALJ's finding that he was not disabled prior to January 22, 2012, arguing that the ALJ erred in failing to: (1) consider evidence from his treating physicians; (2) properly evaluate the impact of his obesity on his ability to work; and (3) give legally sufficient reasons for rejecting plaintiff's statements regarding the nature and severity of his pre-January 2012 impairments. ECF No. 17 at 11-20.

A. The ALJ Properly Considered the Medical Evidence of Record

Plaintiff argues that the ALJ failed to properly consider his pre-January 2012 medical records, including a statement from plaintiff's treating physician. ECF No. 17 at 11-14.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff first contends that the ALJ impermissibly rejected without explanation a statement from his treating physician, Dr. Diego F. Ferro, M.D. ECF No. 17 at 12. The letter written by Dr. Ferro, which is dated December 29, 2010, includes the following statement:

> Mr. Cesar Santiago is a patient that I have been taking care of since 11/03/2010. He has chronic Lymphedema of the right lower extremity with multiple exacerbations in the past year; requiring multiple treatments for superimposed bacterial infections. This condition affects his daily activities and gain pattern. He requires specialized care/management for this particular condition as he has failed conventional medical and pharmacological therapy.

AR 320.

Conspicuously missing from the statement is an opinion addressing the severity of plaintiff's impairments. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restriction."), 20 C.F.R. § 416.927(a)(2) (same). The statement provides a diagnosis, but does not identify specific restrictions or indicate what activities plaintiff can still perform despite his medical condition. As the statement does not constitute an opinion regarding plaintiff's functional limitations, there was simply no opinion to reject. Thus, the ALJ did not err in this regard.

/////

1    Plaintiff next contends that the ALJ failed to properly consider numerous pre-January
2    2012 records which documented the severity of plaintiff's impairments. ECF No. 17 at 11-14.
3    The records cited by plaintiff document that plaintiff experienced swelling, pain, and the need to
4    elevate his legs. *See, e.g.,* AR 205, 206, 217, 219, 228, 229, 241. The ALJ did not specifically
5    discuss each piece of evidence identified by the plaintiff but he had no obligation to do so. An
6    ALJ need not discuss every piece of evidence in the record, so long as his decision is supported
7    by substantial evidence. *See Howard v. Barnhart*, 341 F.3d 1006, 2012 (9th Cir. 2003). Here,
8    every physician that provided an opinion regarding plaintiff's functional limitations found that
9    plaintiff retained the ability to perform the RFC assessed by the ALJ, and the ALJ relied on this
10   opinion evidence in assessing plaintiff's RFC. There was substantial evidence to support that
11   RFC assessment.

12   On September 18, 2010, plaintiff was examined by Dr. Satish Sharma. AR 286-291. Dr.
13   Sharma diagnosed plaintiff with bronchial asthma, sleep apnea syndrome, venous insufficiency in
14   right lower extremity, and morbid obesity. *Id*. at 290. It was his opinion that plaintiff could lift
15   20 pounds occasionally and 10 pounds frequently, and stand and walk for 4 hours per day with
16   normal breaks. *Id*. He further opined that plaintiff had no manipulative impairments, and no
17   limitations in speech, hearing, or vision. *Id*.

18   In September 2011, plaintiff underwent a comprehensive internal medicine evaluation,
19   which was performed by Dr. Jonathan Schwartz. *Id*. at 325-328. Dr. Schwartz diagnosed
20   plaintiff with lymphedema, shortness of breath, likely secondary to asthma, emphysema, and
21   morbid obesity. *Id*. at 328. Based on the examination, Dr. Schwartz opined that plaintiff could
22   stand and walk up to four hours, sit up to six hours, had no limitations in lifting or carrying, and
23   no manipulative or environmental limitations. *Id*.

24   The record also contains a physical RFC assessment completed by Dr. N.J. Rubaum on
25   September 29, 2010. *Id*. at 294-299. Based on a review of the medical records, Dr. Rubaum
26   opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or sit
27   at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally climb
28   ramps and stairs but never ladders, ropes, or scaffolds; occasionally crouch and crawl; and

frequently stoop and kneel. *Id.* at 295-297. Dr. Rubaum also opined that plaintiff had no manipulative or communicative limitations, but he should avoid even moderate exposure to fumes, odors, dusts, and gases, as well as exposure to hazards (machinery, heights, etc.). *Id.* at 297-298.

The ALJ considered each of these opinions in assessing plaintiff's RFC. The ALJ ultimately found that plaintiff was more limited than the opinions given by Drs. Sharma and Schwartz, and therefore gave their opinions reduced weight. The ALJ, however, gave great weight to the opinion of Dr. Rubaum because it was supported by the evidence of record, a finding that plaintiff does not specifically dispute. Since Dr. Rubaum's opinion constitutes substantial evidence, the ALJ did not err in assessing plaintiff's RFC. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

      B. <u>The ALJ Adequately Considered Plaintiff's Obesity</u>

Plaintiff argues that the ALJ failed to properly evaluate the impact his obesity had on his ability to perform work related functions in a sustained manner as required by Social Security Ruling ("SSR") 02-1p. ECF No. 17 at 14-16.

SSR 02–1p describes obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." *Id*. "The combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id*. In assessing a claimant's RFC, the ALJ "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Id*. "As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing SSR 01–02p).

The record demonstrates that the ALJ considered plaintiff's obesity in assessing his RFC.
/////

8

1    The ALJ noted that plaintiff weighs 400 pounds and stands 5'8'' tall, and also concluded that his
2    morbid obesity was a severe impairment.  AR 14, 16.  Furthermore, in determining plaintiff's
3    RFC the ALJ relied on Dr. Rumbaum's opinion, who accounted for plaintiff's morbid obesity in
4    formulating his opinion.  *See id.* at 295 (Dr. Rumbaum's opinion, in which he notes that plaintiff
5    is 5'6'' in height and weighs 405 pounds and morbidly obese).  Thus, the ALJ properly
6    considered plaintiff's morbid obesity.  *See Burch*, 400 F.3d at 684; *Garcia v. Comm'r Soc. Sec.*
7    *Admin.*, 498 F. App'x 710, 712 (9th Cir. 2012) (ALJ consider obesity where he found the
8    plaintiff's obesity severe and relied on opinion of a physician who recognized it).

###    C. The ALJ Properly Discounted Plaintiff's Subjective Complaints

10   Plaintiff further contends that the ALJ erred by failing to provide clear and convincing
11   reasons for discounting his subjective complaints.  ECF No. 17 at 17-20.
12   In evaluating the credibility of subjective complaints, the ALJ should first consider
13   objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,
14   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ may
15   then consider the nature of the symptoms alleged, including aggravating factors, medication,
16   treatment and functional restrictions.  *See id.* at 345-347.  The ALJ also may consider: (1) the
17   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
18   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
19   prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen*, 80 F.3d at 1284.
20   Work records, physician and third party testimony about nature, severity and effect of symptoms,
21   and inconsistencies between testimony and conduct also may be relevant.  *Light v. Soc. Sec.*
22   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly
23   debilitating medical problem may be a valid consideration by the ALJ in determining whether the
24   alleged associated pain is not a significant nonexertional impairment.  *See Flaten v. Secretary of*
25   *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own
26   observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
27   substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).
28   /////

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

Plaintiff testified that he experiences swelling in his right leg that causes severe pain. AR 30-31. He claimed that he must keep his leg elevated "most of the time" throughout the day, and that if he sits in the same position for 20 minutes his leg will fall asleep and he will be unable to walk. *Id*. at 32-34. He testified that he cannot exercise because he needs to stay off his feet. *Id*. at 38. He also stated that he was unable to "do anything with the family nowadays," including taking his kids to the park. *Id*. at 41. He stated that because of the swelling he cannot wear jeans, and that he is too embarrassed to go in public in shorts, so he "doesn't go outside period." *Id*. at 41.

The ALJ found that although the record supports some limitations and restrictions, plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments were not supported by plaintiff's activities of daily living. AR 17. As observed by the ALJ, plaintiff reported in an exertion questionnaire that he can walk a half mile, take a 15 minute break, and then walk another half mile. *Id*. at 148. He reported being able to carry groceries from his front door to his kitchen, drive a car for about a half hour before his leg goes numb, and perform some yard work, including mowing his lawn for 15 minutes before needing a break. *Id*. at 150.

Plaintiff contends that the activities he reported in the exertion questionnaire show that his activities are extremely limited, and do not evidence that he is able to work. ECF No. 17 at 19. Although the daily activities described in the exertional questionnaire were limited, the court nevertheless finds that the ALJ properly found that plaintiff's reported activities did not support his allegations concerning the intensity, persistence, and limiting effects of his impairments. As noted above, plaintiff testified that he must continuously elevate his leg, can do no exercise because he must stay off his fee, is unable to do any activities with his family, and that he "doesn't go outside period." AR 32-34, 38, 41. These allegations are inconsistent with plaintiff's reported activities, which included the ability to walk a full mile with a 15 minute break in the

10

middle, drive a car, and perform some yard work. *Id*. at 148-150. The ALJ permissibly relied on this inconsistency in finding that plaintiff was not as limited as he alleged. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

IV.   CONCLUSION

The ALJ applied the proper legal standard and supported his decision with substantial evidence. Accordingly, it is hereby ORDERED that:

   1. Plaintiff's motion for summary judgment is denied;

   2. The Commissioner's cross-motion for summary judgment is granted; and

   3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 30, 2015.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE